UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENE W.,

       *Plaintiff*,

v.

CASE NO. 1:22-cv-12861
Magistrate Judge Patricia T. Morris

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant*.

_____/

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 21, 24)**

    A.    **Introduction and Procedural History**

Dene W. appeals the Commissioner of Social Security's final decision to partially deny her application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). After she protectively applied for DIB and SSI in January 2019, alleging that she became disabled in November 2018, the Administration denied her claims at the initial level. (ECF No. 14, PageID.290–95, 361–62). Dene appealed that decision to an ALJ who, after conducting two hearings, denied her claims in part, finding that she did not become disabled until October 2021. (*Id.* at PageID.82, 163, 177). Dene then appealed the ALJ's decision to the Appeals Council who denied review. (*Id.* at PageID.53).

1

Dene later filed a complaint seeking judicial review of the ALJ's final decision. (ECF No. 1). Both parties consented to the undersigned, magistrate judge, "conducting all proceedings in this case, including entry of a final judgment on all post-judgment matters." (ECF No. 18, PageID.910). The parties have now filed cross-motions for summary judgment. (ECF Nos. 21, 24).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2018). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence,

nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

  **C.**   **Framework for Disability Determinations**

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2018). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity

> of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (2022); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2022).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*,

4

459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2022)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Dene was not disabled until October 1, 2021. (ECF No. 14, PageID.82). At step one, the ALJ found that Dene had not engaged in substantial gainful activity since November 7, 2018, her alleged onset date. (*Id.* at PageID.67). At step two, the ALJ concluded that Dene had the following severe impairments:

> Cervical spondylosis with radiculopathy, lumbar anterolisthesis and degenerative changes with radiculopathy; degenerative joint disease of the bilateral knees; obesity; bipolar disorder; and anxiety disorder

(*Id.*)   The ALJ found that Dene had several impairments—such as lupus, degenerative joint disease, and eczema—that were either nonsevere or not medically determinable. (*Id.* at PageID.68–69). At step three, the ALJ found that none of Dene's severe impairments met or medically equaled a listed impairment. (*Id.* at PageIID.69–72). Next, the ALJ determined that Dene had a residual functional capacity to perform light work with the following limitations:

> After careful consideration of the entire record, I find that since the alleged onset date, the claimant has the residual functional capacity to perform less than the full range of light exertional work. She can occasionally lift and carry 20 pounds and frequently lift and carry 10

pounds. She can sit, stand, and walk for six hours in a typical eight-hour workday. She can push and pull as much as she can lift and carry. She can frequently reach overhead bilaterally. She can occasionally climb ramps and stairs. She cannot climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, and crouch, but she cannot crawl. She cannot work at unprotected heights, operate moving mechanical parts, or operate a commercial vehicle. She cannot work in weather or extreme cold. She cannot handle objects that vibrate. She can perform simple tasks in a low stress job, which I define as work that requires no more than occasional decision-making required. She can occasionally interact with coworkers but cannot perform joint tasks with coworkers. She can occasionally interact with members of the public . . . .

(*Id.* at PageID.72–73). At step four, the ALJ found that Dene could not perform her past relevant work, and at step five, the ALJ found that jobs in the national economy, that Dene could perform, existed in significant numbers until October 1, 2021, when her "age category changed." (*Id.* at PageID.80–82).

### E. Background

#### 1. Medical Evidence

Dene alleges that she cannot work due to a combination of physical and mental impairments such as lumbar anterolisthesis, degenerative joint disease in her knees, obesity, and bipolar disorder. Yet the only issue relevant to this appeal is her alleged reliance on a cane to stand and walk.

Dene's medical record reflects that, on occasion, she displayed limited functioning in her legs and hips. (*See* ECF No. 14, PageID.74–75). At a physical examination in April 2019, for example, she displayed a reduced range of motion

and reduced mobility. (*Id.* at PageID.615–21). She also had difficulty walking for more than one hour and climbing stairs. (*Id.*)

More often, Dene's physical examinations were normal. (*E.g.*, *id.* at PageID.660–62, 873–74). Indeed, physicians sometimes noted that she displayed a normal gait without using a cane or any similar device. (*See, e.g.*, *id.* at PageID.615–21, 764–65). Dene also exhibited full strength in her legs and normal mobility. (*Id.* at PageID.686, 720–22). And despite reporting pain in her knees, Dene sought little to no treatment since 2019, evidently declining to undergo physical therapy. (*Id.* at PageID.78).

### 2. The Administrative Hearings

The ALJ held a hearing in February 2020. (*Id.* at PageID.165). Dene attended the hearing from the Administration's office in Pontiac, Michigan, where she and the Administration's "hearing monitor," Drew Howard, appeared before the ALJ via video conference. (*See id.* at PageID.165, 175, 321, 341–42). Due to technical issues, the ALJ ended the videocall after just fourteen minutes and planned to reschedule the hearing for a later date. (*Id.* at PageID.166, 176). In the ALJ's written decision, he noted that either he or another official[1] saw Dene "walk[] into the . . .

---

[1] The ALJ did not clarify who saw Dene walk into the February hearing without a cane, writing only that she "was observed" walking without "any assistive devices." (*Id.* at PageID.73–74, 77–78). From the transcript of the hearing, the Court can infer that at least two officials could have observed Dene: the ALJ himself, who attended the meeting through a videocall, and the "hearing monitor," who apparently was physically present at

hearing with no assistive device, carrying a purse and files, and with a normal gait." (*Id.* at PageID.77). He also noted that "[a]t the end of the hearing [Dene] got up and put on her coat without any observable difficulties." (*Id.* at PageID.77–78).

The ALJ held the rescheduled hearing in October 2020. (*Id.* at PageID.179). Because of the COVID-19 pandemic, the ALJ conducted the hearing over the phone, and Dene telephoned in from her house where she was out of the ALJ's view. (*Id.* at PageID.180–81; *see also id.* at PageID.346, 468 (notifying Dene that the ALJ would conduct her October hearing by "telephone" rather than "video teleconferencing")). At the hearing, Dene testified that she used a cane "every day" and that she could no "get out of [her] chair" or "walk[]" into her "kitchen" without it. (*Id.* at PageID.212). Yet despite not visually seeing Dene at this hearing, the ALJ later wrote that he observed her stand and walk without any difficulty at the October hearing. (*Id.* at PageID.78).

### 3. The Vocational Expert's Testimony

The ALJ questioned a Vocational Expert ("VE") at the October hearing. (*Id.* at PageID.213). The ALJ asked the VE to assume a hypothetical person of the same age and educational experience of Dene who could perform a "full range of light work" except that:

---

the Administration's Pontiac Office with Dene throughout the hearing. (*See id.* at PageID.165, 175, 321, 341–42).

> She can occasionally lift and carry [twenty] pounds, frequently ten pounds[.] [S]he can sit, stand[,] and walk for six hours in a typical eight-hour day. She can push and pull as much as she can lift and carry. She can frequently lift over head bilaterally
> She can occasionally climb ramps and stairs. She should not be climbing ladders, ropes[,] or scaffolds. She can occasionally stoop, kneel[,] and crouch. She cannot crawl. She cannot . . . work at unprotected heights, operate mechanical parts[,] or operate a commercial vehicle. She cannot work in weather, extreme cold[,] or handle objects that vibrate. She can perform simple, routine tasks in a low stress job which I define as [one requiring] occasional decision-making only.
> She can occasionally interact with coworkers, but not work on joint tasks with coworkers. And, she can occasionally interact with members of the public.

(*Id.* at PageID.215–16). The VE testified that an individual with these limitations could perform Dene's past relevant work as a "packer." (*Id.* at PageID.216). That individual could also work as an assembler, light work, approximately 160,000 jobs, Dictionary of Occupational Titles ("DOT") code 706.684-022; a sorter, light work, 105,000 jobs, DOT code 322.687-022; and a shirt presser for a dry cleaner, light work, 265,000 jobs, DOT code 363.685-026. (*Id.* at PageID.216–17).

The VE then testified that most employers would not tolerate an employee being off task for more than fifteen percent of the workday or absent more than one and a half days per month. (*Id.* at PageID.217). The VE then explained her testimony was consistent with the DOT. (*Id.* at PageID.218).

### F. Analysis

In essence, Dene argues that the ALJ erred at step five because he did not present the vocational expert with an RFC that accurately reflected her functional abilities. *See Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Specifically, she argues that the ALJ did not rely on substantial evidence in rejecting her allegation that she required a cane to stand and walk. (*See* ECF No. 21, PageID.914). Among other reasons, the ALJ discounted her testimony because he observed her "walk[] into" her October 2020 hearing "with no assistive device and no obvious difficulties walking." (ECF No. 14, PageID.78). The problem: Dene never "walked into" a hearing in October 2020. Because of the COVID-19 pandemic, Dene attended the October 2020 hearing over the phone, dialing in from her house where she was out of the ALJ's view. (*Id.* at PageID.180–81; *see also id.* at PageID.346, 468 (notifying Dene that the ALJ would conduct her October hearing by "telephone" rather than "video teleconferencing")).

The Commissioner agrees that the ALJ could not have observed Dene walking at her October 2020 hearing and that he did not rely on substantial evidence in claiming to have done so. (ECF No. 24, PageID.926–27); *see* 42 U.S.C. § 405(g) (2018); Carolyn A Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court § 8:4 (2019) (explaining that all of an ALJ's subsidiary factual findings, not just the ALJ's ultimate determination that an individual is not

10

disabled, must be supported by substantial evidence). Even so, the Commissioner argues that the Court need not remand the ALJ's decision because his error was harmless. (ECF No. 24, PageID.927–28). That is, even if the ALJ had not made this erroneous finding, he still would have determined that Dene was not disabled until October 2021.

Indeed, Dene must do more than simply demonstrate an error in the ALJ's decision for this Court to remand this matter to the Administration. While "agencies are bound to follow their own regulations," federal courts will not remand a matter to an agency unless "the claimant has been prejudiced on the merits or deprived of substantial rights . . . ." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) (quotation marks omitted) (first quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); and then quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). In other words, the court will not remand if "the administrative agency would have made the same ultimate [conclusion] with the erroneous finding removed from the picture . . . ." *Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *7, (6th Cir. Sept. 16, 1993) (quotation marks omitted) (quoting *Kurzon v. United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976)).

On appeal to the district court, the claimant bears the burden of proving not only that the ALJ erred, but that the ALJ's error was harmful. Kubitscheck & Dubin,

11

*supra*, § 9:57 (quoting *Shinseki v. Sanders*, 556 U.S. 396 (2009)). Even so, many errors cause a harm that is "obvious" to the reviewing court. *Kuotrakos v. Astrue*, 906 F. Supp.2d 30, 38 (D. Conn. 2012). In these situations, the claimant need not explain precisely how he or she was prejudiced. *Shinseki*, 556 U.S. at 410. But when a harm is not obvious, the moving party must "explain why the erroneous ruling caused harm." *Id.*; *see McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (holding that *Shinseki* applies to social security cases).

According to the Commissioner, the ALJ's error was harmless because it was nothing more than a typographical mistake. (ECF No. 24, PageID.927–28). The Commissioner reasons that towards the beginning of the ALJ's discussion of Dene's RFC, he recalled that Dene had been "observed [walking] into the hearing room with a normal gait and without" a cane. (ECF No. 14, PageID.73). A few sentences later, the ALJ recalled Dene's allegation at the October hearing that she required a cane to stand and walk, but did not claim to have seen her walking at that hearing. (*Id.* at PageID.74). Thus, when the ALJ later stated that Dene had been observed walking normally without a cane at the October hearing, he "clearly" meant to refer to the February hearing. (ECF No. 24, PageID.928).

To be sure, typographical mistakes are considered harmless errors so long as the ALJ's intended "meaning is clear in context." *Steven B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02426, 2023 WL 4116604, at *7 (S.D. Ohio June 22, 2023); *see also*

*Gomez v. Berryhill*, No. 3:18-cv-11738, 2019 WL 5680841, at *5 (E.D. Mich. June 11, 2019). But here, it is far from clear that the ALJ meant to refer to Dene's February hearing instead of her October hearing. True, when the ALJ first summarized Dene's hearings, he only mentioned that Dene had been observed walking without a cane at the February hearing. (ECF No. 14, PageID.73–74). But when he revisited these hearings later in his decision, he claimed that Dene had been seen walking into *both* hearings without a cane. (*Id.* at PageID.77–78). Just a paragraph after the ALJ stated (for the second time) that Dene had been observed walking into the February hearing without a cane, the ALJ wrote that "[a]s with the prior hearing," Dene also "walked into" the "October" hearing with no cane and "no difficulties walking." (*Id.*) Had the ALJ meant only to refer to the February hearing, then one would expect him to have recalled seeing Dene walk without a cane at only one of the two hearings—not both. The ALJ's reference to Dene's October hearing, then, was not clearly a simple typographical error. *See Steven B.*, 2023 WL 4116604, at *7.

Yet even if that erroneous finding was intentional, it was still harmless. Although the harmless error rule applies to both procedural and fact-finding errors, the Sixth Circuit holds fact-finding errors to a more lenient standard. Where ALJs flout regulations designed to confer "important procedural safeguards" on claimants—such as requiring ALJs to articulate the basis for their findings—such

13

errors are harmless only if the ALJ could not have reached a more favorable finding with the procedural error removed from the picture. *Rabbers*, 582 F.3d at 657–58; *see also Wilson*, 378 F.3d at 546–48, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241–43 (6th Cir. 2002); *Shalala*, 1993 WL 361792, at *7. And that is true even if the ALJ reached reasonable conclusions that happened to have been supported by substantial evidence. *Wilson*, 378 F.3d at 546.

Suppose, for example, an ALJ neglects to explain his or her reasons for discrediting a medical source's opinion where reasonable minds could find substantial evidence to either adopt or reject the opinion. Although the ALJ might have been able support that choice with substantial evidence, without knowing what evidence (if any) the ALJ considered, or why that evidence led the ALJ to reject the opinion, a court could not say with any "substantial" certainty that the ALJ would have reached the same conclusion if the ALJ had articulated his or her reasons for rejecting the opinion. *See id.* at 546–48.

On the other hand, where an ALJ supports a conclusion with a subsidiary factual finding that is not supported by substantial evidence, courts in this circuit must affirm the ALJ's decision so long as the ALJ cited other "substantial, legitimate evidence" in support of his or her "factual conclusion[]"—even if the ALJ did not indicate that this "other" evidence would have independently led him or her to reach the same conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir.

2012); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013); *Riser v. Comm'r of Soc. Sec.*, No. 13-11135, 2014 WL 1260127, at *16 (E.D. Mich. Mar. 26, 2014). Take *Ulman* for example. There, an ALJ discredited a claimant's allegation that she could "do very little because of pain" in part because he mistakenly found that she had climbed a ladder during the period she was allegedly disabled. 693 F.3d at 711–13. Although the Sixth Circuit agreed that this specific finding was not supported by substantial evidence, the Court still upheld the ALJ's choice to discredit the claimant's subjective complaints because the ALJ also supported his conclusion by citing a medical opinion that cut against the claimant's allegations. *Id.* at 713–14. The Sixth Circuit reasoned that because this medical opinion provided substantial evidence to discount the claimant's allegations on its own, the ALJ's erroneous finding was harmless. *Id.*

Implicitly, the Court found it irrelevant that the ALJ might have discounted the claimant's allegations to a lesser extent if he had only considered the medical opinion. *Id.* Nowhere in the opinion did the Court, for example, consider whether the ALJ might have only discredited the claimant because of the *combined* weight of both the medical opinion and her ability to climb ladders. *Id.* Evidently, it did not matter to the Court whether the ALJ might have adjusted his findings as to the claimant's credibility based on his changed understanding of the record. *See id.* In fact, the Court relied on a Ninth Circuit decision that rejected a dissenting opinion

15

criticizing this forgiving version of harmless error review because it ignored the impact fact-finding errors can have on an ALJ's conclusions. *Id.* at 714 (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)); *see Carmickle*, 53 F.3d at 1168–69 (Graber, J., concurring in part and dissenting in part) ("The fact that some of the ALJ's reasons [are] supported by substantial evidence [is] a *necessary pre-condition* for reaching the harmless error test; it [is] *not the test itself*.").[2] By relying on the majority's opinion, the Sixth Circuit presumably considered, and rejected, this dissent. [3]

---

[2] While *Ulman* and *Carmickle* dealt specifically with credibility determinations, nothing in their rationale cabins their holdings to that specific context rather than all situations where an ALJ makes an erroneous, subsidiary finding of fact.

[3] Although *Ulman* is binding precedent, I believe it is wrongly decided for many of the reasons detailed by Judge Graber's dissenting opinion in *Carmickle*. As explained in the dissenting opinion, *Carmickle* and *Ulman*'s approach "eviscerates" harmless error review by shifting the Court's focus from the impact of the error on the ALJ's findings to the impact of the error on the reasonableness of the ALJ's conclusions. *Carmickle*, 533 F.3d at 1168–69 (Graber, J., dissenting). After all, substantial evidence is simply evidence that a "reasonable mind might accept as adequate to support a conclusion," and in many instances, substantial evidence can support several different findings simultaneously. *Rogers*, 486 F.3d at 241; *Cutlip*, 25 F.3d at 286. So the mere fact that an ALJ's conclusions might remain supported by substantial evidence with an erroneous, subsidiary finding removed from the picture does not necessarily mean that the ALJ would reach the same conclusions on remand. *See Carmickle*, 533 F.3d at 1168–69 (Graber, J., dissenting). For that reason, the Sixth Circuit's approach usurps the Administration of its authority to decide factual issues by permitting courts to substitute new rationales—based on different combinations of factors—for the rationale of the ALJ. *See Shalala*, 1993 WL 361792, at *6; *Mullins v. Sec'y of Health & Hum. Servs.*, 680 F.2d 472, 472–73 (6th Cir. 1982); *Komora v. Comm'r of Soc. Sec.*, No. 2:19-CV-11947-TGB-APP, 2021 WL 1220868, at *4–5 (E.D. Mich. Mar. 31, 2021) (differentiating between situations where district courts identify additional evidence in support of an ALJ's reasoning that the ALJ did not cite from situations where district courts uphold an ALJ's decision on a different rationale).

In short, a court assessing the harm of a procedural error asks whether correcting the error could lead the Administration to reach a favorable decision. A court assessing the prejudicial impact of a fact-finding error, by contrast, asks not whether correcting the error could lead the Administration to reach more favorable conclusions, but whether the Administration's original conclusions would remain supported by substantial evidence with the erroneous, subsidiary finding removed from the picture. *See Marshall L. v. Berryhill*, No. 1:17-cv-00128, at *12 (W.D.N.Y. May 14, 2018).

This latter approach applies here because Dene argues that the ALJ erred on the facts, not the law. *See Ulman*, 693 F.3d at 713–14. And under this more lenient approach, the ALJ's error was harmless because his determination that Dene did not require a cane would still be supported by substantial evidence even if he did not mistakenly recall observing Dene walk without a cane at the October hearing. *See id.*; *New v. Colvin*, No. 12–219–ART, 2013 WL 4400522, at *6 (E.D. Ky. Aug.13, 2013). Indeed, the ALJ relied on much more than this one observation to support his finding. To start, while the ALJ did not observe Dene walk without a cane at the October hearing, he (or another official) did observe her walk with no apparent difficulty without using a cane at the February hearing. (*Id.* at PageID.73–74, 165). Further, the ALJ cited several medical records where Dene displayed full strength in her legs, a normal range of motion, and a "normal gait without any assistive

17

devices." (*Id.* at PageID.74 (citing *id.* at PageID.617, 658–62, 686, 720–22)). From this evidence alone, a reasonable person could determine that Dene did not require a cane. The ALJ's finding, then, is harmless because it remains supported by substantial evidence. *See Ulman*, 693 F.3d at 713–14.

Even if the Court were to apply the more stringent form of harmless error review applicable to procedural errors, the ALJ's error would still be harmless as there would be little doubt that he would reach the same conclusions on remand. To find that correcting this error could lead the ALJ to change his findings concerning Dene's functional abilities, the Court would have to accept that the ALJ was unsure of Dene's need for a cane until he saw her walk without one for a second time. Yet because the ALJ had already seen Dene walk without a cane once and because he cited numerous medical records indicating that Dene did not rely on a cane, it is difficult to imagine why seeing Dene walk without a cane twice, rather than only once, would have been the deciding factor in finding that she did not require a cane. By itself, the ALJ's mistaken assertion that he saw Dene walk without a cane at the October hearing is superfluous evidence of her ability to walk without an assistive device. For that reason, I doubt that the ALJ would change his ultimate finding that Dene did not require an assistive device to walk or stand, and I find that even under this standard, the ALJ's error was harmless and does not warrant remand.

## H. Conclusion

For these reasons, Plaintiff's motion is **DENIED**, (ECF No. 21), the Commissioner's Motion (ECF No. 24) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

Date:  September 12, 2023               S/PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge